UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KOURTNEY S. RODGERS

VERSUS

STATE OF LOUISIANA BOARD
OF NURSING

CIVIL ACTION

NO. 15-615-JJB-SCR

### RULING

This matter is before the Court on a Motion to Dismiss (Doc. 21) filed by the defendant, State of Louisiana Board of Nursing ("the LSBN") and a Motion for Reconsideration (Doc. 36) filed by the plaintiff, Kourtney S. Rodgers ("Rodgers") urging the Court to reconsider its ruling striking her Opposition from the record (Doc. 36). For the reasons stated herein, the plaintiff's Motion for Reconsideration (Doc. 34) is **DENIED**, and the defendant's Motion to Dismiss (Doc. 21) is **GRANTED**.

I.   Background

The LSBN is charged with regulating the practice of nursing, licensing nurses, and accrediting nursing schools in Louisiana. In carrying out these functions, the LSBN has established criteria for accrediting and terminating the accreditation status of nursing schools in Louisiana.

One of the LSBN's criteria is that a nursing education program must have a pass rate of 80% or greater achieved by the candidates taking the licensure examination for the first time in any one January to December calendar year. If a nursing education program fails to achieve the 80% pass rate, the program is placed on conditional approval. Conditional approval cannot be granted to a program for more than three consecutive one-year periods. After three consecutive years on conditional approval, a program cannot admit any new students into its nursing

1

program. As of February 19, 2015, the Grambling State University School of Nursing ("Grambling") had been on conditional approval for three consecutive years. That same day, the LSBN verified that Grambling's 2014 pass rate was again below the 80% threshold requirement. The LSBN subsequently terminated the Grambling nursing program on June 15, 2015.

Rodgers is a student at Grambling, where she has been enrolled since August, 2012, pursing a bachelor's of science in nursing. She filed a "Complaint for Equitable Relief/Damages for Violation of 15 U.S.C. § 1, Sherman and 15 U.S.C. § 15 Clayton Antitrust Act" (Doc. 1) against LSBN on August 12, 2015. Rodgers asserts that LSBN's "singular reliance upon the 80% pass rate to terminate Grambling State's nursing program creates a restraint on trade and commerce with respect to the areas of baccalaureate and professional nursing education," in violation of § 1 of the Sherman Antitrust Act and § 15 of the Clayton Act. *Compl.* ¶ 9, Doc. 1.

On September 15, 2015, the Court held a telephone status conference related to Rodgers' Motion for Temporary Restraining Order (Doc. 7), and the Court issued a Briefing Notice (Doc. 19). The Briefing Notice set forth deadlines for the defendant to file its Opposition to the Motion for Temporary Restraining order, as well as deadlines to file any responsive motions in this matter. Specifically, the Court ordered the defendant to file any responsive motions within 10 days of the date of the order. *Briefing Notice*, Doc. 19. Any oppositions thereto were ordered to be filed within 10 days of the filing of the motion. *Id.* The Briefing Notice also specified that any oppositions "shall not exceed 10 pages." *Id.*

The LSBN filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction, Failure to State a Claim Upon Which Relief Can be Granted, and Failure to Join a Party (Doc. 21) on September 25, 2015, within the deadlines set forth in the Court's Briefing Notice. Rodgers originally filed an Opposition to LSBN's motion to dismiss (Doc. 29). However, Rodgers' response was not filed in accordance with this Court's Briefing Notice, and the Court struck it from the record. *Ruling*

2

*and Order* 4, Doc. 34. The Court found that the Opposition was untimely, exceeded the page limit by ten pages, and the arguments contained within it were "unclear, repetitive, and did not offer much as a substantive response to the motion to dismiss." *Id.* at 2–4.

**II.    Plaintiff's Motion for Reconsideration** (Doc. 36)

In her Motion for Reconsideration, Rodgers asks this Court to set aside its ruling and reinstate her original Opposition to LSBN's motion to dismiss. *Mot. Recons.* 3–5, Doc. 36. Federal Rule of Civil Procedure ("Rule") 54(b) permits the Court to revise an interlocutory order "at any time before entry of judgment adjudicating all of the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Hall v. Louisiana*, 983 F. Supp. 2d 820, 834 (M.D. La. 2013), *reconsideration denied* (Apr. 7, 2014). District courts have considerable discretion in deciding whether to reconsider an interlocutory order. *Hall*, 983 F. Supp. 2d at 834. However, motions for reconsideration based upon the same arguments previously submitted merely waste the limited time and resources of the Court. *Id.*

In the instant case, Rodgers' Motion for Reconsideration (Doc. 36) and supporting memorandum (Doc. 36-1) do not address any new evidence or claim to assert any manifest errors of law or fact. Nor did Rodgers ask this Court to accept an Opposition that responded to the Court's concerns about clarity and repetitiveness. Instead, Rodgers simply asks this Court to reinstate the original Opposition. This falls far short of proving that Rodgers is entitled to the extraordinary remedy of reconsideration. Therefore, Rodgers' Motion for Reconsideration (Doc. 36) is **DENIED**.

The Court recognizes that the effect of denying Rodgers' Motion for Reconsideration is that she now has no substantive response on record to LSBN's Motion to Dismiss. In light of this concern, the Court has diligently worked to independently research and analyze the legal issues

presented. In preparing this ruling, the Court has gone so far as to attempt to formulate arguments on behalf of Rodgers.

**III.     Defendant's Motion to Dismiss** (Doc. 21)

Under Rule 12(b)(1), a party may challenge a court's subject matter jurisdiction at any time. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999). The party asserting that the court has jurisdiction bears the burden of proving that the court may adjudicate the case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In determining whether it has subject matter jurisdiction, the court may look at the complaint alone, the complaint supplemented by undisputed facts in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.*

The Eleventh Amendment bars suits by private citizens against a state in federal court, unless a state consents to suit or Congress has validly abrogated sovereign immunity in the exercise of its power to enforce the Fourteenth Amendment.[1] *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Hans v. Louisiana*, 134 U.S. 1, 15

---

[1] Louisiana clearly has not consented to suit in this matter. *Fireman's Fund Ins. Co. v. Dep't of Transp. & Dev., State of La.*, 792 F.2d 1373, 1376 (5th Cir. 1986) ("The Louisiana statutes . . . make clear that the state makes no intentional waiver of Eleventh Amendment immunity as to its executive departments."). The issue of Congressional abrogation, however, is more difficult. In the context of antitrust suits, the Courts have traditionally discussed a different type of immunity for states—state action immunity. *See Parker v. Brown*, 317 U.S. 341, 350–52 (1943) (holding that states are immune from antitrust suits where the state is a defendant and there was "state action"). "The Supreme Court has not focused on either the interplay between the state action doctrine and the Eleventh Amendment or the inherent conflicts between the two doctrines in antitrust cases with state actor defendants." Susan Beth Farmer, *Balancing State Sovereignty and Competition: An Analysis of the Impact of Seminole Tribe on the Antitrust State Action Immunity Doctrine*, 42 VILL. L. REV. 111, 169 (1997). Moreover, this Court has found district court cases that have addressed the issue and reached different results. See *Mizlou Television Network v. Nat'l Broad. Co.*, 603 F. Supp. 677, 680–81 (D.D.C. 1984) (holding that a state agency was entitled to Eleventh Amendment immunity in a suit brought under the antitrust acts); *DeSoto Med. Ctr., Inc. v. Methodist Hosps. of Memphis*, 604 F. Supp. 307, 310 (S.D. Miss. 1985) (holding that a state agency was not entitled to Eleventh Amendment immunity in a suit brought under the antitrust acts). This Court finds that these immunity defenses are distinct in that a state or agency may be entitled to Eleventh Amendment immunity, yet not entitled to state action immunity, and vice-versa. Additionally, the Court has researched this issue extensively and has found no clear statement that Congress has abrogated Eleventh Amendment immunity for liability under antitrust acts. Therefore, under the circumstances presented in this case, the Court finds that Louisiana may invoke the protection of Eleventh Amendment immunity in a suit brought under the antitrust acts.

(1890). The State's Eleventh Amendment immunity extends to any state agency or other political entity that is deemed the state's "alter ego" or an "arm of the State." *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688–89 (5th Cir. 2002) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). A defendant state agency will be deemed an "arm of the state," if the agency is so closely connected to the state that the state itself is "the real, substantial party in interest." *Hudson v. City of New Orleans,* 174 F.3d 677, 681 (5th Cir. 1999). The Eleventh Amendment will not bar a suit, however, if the agency "possesses an identity sufficiently distinct" from that of the State. *Vogt*, 294 F.3d at 689 (citing *Pendergrass v. Greater New Orleans Expressway Comm'n*, 144 F.3d 342, 344 (5th Cir.1998)).

There is no bright-line test for determining whether a political entity is an "arm of the State" for purposes of Eleventh Amendment immunity. *Vogt*, 294 F.3d at 689; *Hudson*, 174 F.3d at 681. Instead, "the matter is determined by reasoned judgment about whether the lawsuit is one which, despite the presence of a state agency as the nominal defendant, is effectively against the sovereign state." *Vogt*, 294 F.3d at 689 (citing *Earles v. State Bd. of Certified Pub. Accountants of La.*, 139 F.3d 1033, 1037 (5th Cir.1998)). To help identify when a suit against a governmental entity is considered to be a suit against the State, the Fifth Circuit traditionally considers six factors: (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *Id.* A defendant need not possess all six factors to be recognized as an arm of the State, nor are all factors equal to one another. *Hudson*, 174 F.3d at 681–82. The most significant factor is whether a judgment against the agency will be paid with state funds.

5

*Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147–48 (5th Cir. 1991) ("Because an important goal of the Eleventh Amendment is the protection of state treasuries, [this is] the most significant factor in assessing an entity's status.").

### 1. Characterization Under State Law

The first factor is how the state, through its constitution, laws, judicial opinions, attorney general's opinions, and other official statements, perceives the entity in question. *Hudson*, 174 F.3d at 683. If the state characterizes the office in question as an arm of the state, this factor is counted in favor of Eleventh Amendment immunity. *Id.* Here, the first factor points toward Eleventh Amendment immunity because both Louisiana statutes and jurisprudence treat the LSBN as an arm of the State.

La. R.S. 37:914 provides for the creation of LSBN and states that the LSBN is created within the Department of Health and Hospitals ("DHH"). The DHH is specifically created within Louisiana's Executive Branch of government. *See* La. R.S. 36:4(A)(5); 36:251. In its statutes, Louisiana treats all executive departments the same, La. R.S. 36:4(A), and provides that "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court." La. R.S. 13:5106(A); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986). The Louisiana Supreme Court has held "[i]f the office is created by the legislature, or is established in the first instance by the constitution, it is a state office." *Mullins v. Louisiana,* 387 So.2d 1151, 1152 (La. 1980). Therefore, because the Louisiana legislature created the LSBN within the Executive Branch, the Louisiana statutes characterize the LSBN as an arm of the State.

Additionally, jurisprudence provides that the entities within the DHH, like the LSBN, are considered arms of the State. *Darlak v. Bobear*, 814 F.2d 1055, 1059 (5th Cir. 1987); *Earles*, 139

F.3d at 1036–39 (5th Cir. 1988). For example, in *Darlak v. Bobear*, the Fifth Circuit found that Charity Hospital, an entity statutorily created within the DHHR,[2] was an arm of the State for the purpose of sovereign immunity. 814 F.2d at 1059. Similar to Charity Hospital, the LSBN is statutorily created within the DHH. *Compare* La. R.S. 36:251(C) (1988) (establishing Charity Hospital within the DHHR) *with* La. R.S. 37:914(A) (establishing the LSBN within the DHH). Therefore, the statutes and jurisprudence indicate that Louisiana characterizes the LSBN as an arm of the State and thus this factor weighs in favor of Eleventh Amendment immunity.

### 2. Source of the LSBN's Funds

The second factor is the source of the funding for the LSBN. This factor examines, first, whether a judgment against the entity will be paid from state funds, and second, the state's liability for the entity's general debts and obligations. *Hudson*, 174 F.3d at 683.

In this case, the LSBN concedes that it is financially independent from the state because the LSBN is funded solely by the fees it collects from nurses. *See Df.'s Supp. Mem.* 7–8, Doc. 21-1; La. R.S. 37:927; La. R.S. 37:928.[3] Because the LSBN concedes that it is financially independent from the state, the Court proceeds on the assumption that any judgment rendered against the LSBN would be paid from fees collected by the LSBN rather than from state monies.

---

[2] The name of the Department of Health and Human Resources ("DHHR") was subsequently changed to "Department of Health and Hospitals." State Government Reorganization, 1988 La. Sess. Law Serv. 1st Ex. Sess. 1 (West).

[3] While this fact indicates that the LSBN itself is responsible for its general debts and obligations, it does not necessarily answer the question of whether the state could be liable for a judgment rendered against the LSBN. The Court has researched the issue and has been unable to find a statutory provision that either expressly prohibits or allows the LSBN to use state funds to pay a judgment rendered against it. *See Earles*, 139 F.3d at 1036 (finding that the State Board of Certified Public Accountants of Louisiana was financially independent from the state because statutes expressly prohibited the board from using state funds to pay expenses). The Louisiana Constitution provides that judgments against state agencies will be paid only from funds appropriated for that purpose by the state legislature. La. Const. art. XII, § 10. Moreover, other cases have indicated that because of this constitutional provision for the payment of judgments, state agencies within the executive branch of government are considered financially dependent on the state. *Voisin's Oyster House*, 799 F.2d at 187. Regardless, this analysis would not change the ultimate conclusion the Court has reached regarding Eleventh Amendment immunity.

7

Accordingly, the Court assumes that the LSBN is financially independent from the state, and therefore this factor weighs against Eleventh Amendment immunity.

### 3. Degree of Local Autonomy

The third factor examines the degree of local autonomy the entity at issue enjoys. *Hudson*, 174 F.3d at 689–90. This factor examines the "extent of the entity's independent management authority . . . as well as the independence of the individual commissioners who govern the entity." *Vogt*, 294 F.3d at 694 (internal quotations and alterations omitted). In the instant case, this factor leans slightly in favor of finding that the LSBN is an arm of the State for the purposes of Eleventh Amendment immunity.

The LSBN has significant power to regulate the nursing profession and education, and to establish the criteria for licensing nurses in the state. La. R.S. 37:918. The LSBN's powers and duties include the authority to adopt and revise rules and regulations, which militates in favor of finding autonomy. However, the LSBN's rule promulgation must be done in accordance with the Louisiana Administrative Procedure Act. La. R.S. 37:918(12). Moreover, the LSBN is created by the Louisiana legislature, which dictates the LSBN's composition as well as its powers and duties. This oversight by the legislature leans in favor of finding that the LSBN is not autonomous. *See Vogt*, 294 F.3d at 694 (finding there was autonomy when the legislature did not have supervisory control over the agency).

Additionally, the LSBN is composed of ten members, each of whom is appointed by the governor and confirmed by the Senate. La. R.S. 37:914(B). This, itself, "does not point away from Eleventh Amendment immunity." *Voisin's Oyster House*, 199 F.2d at 187. Each member serves at the pleasure of the governor, La. R.S. 37:918, and this "vulnerability of the commissioners to the governor's pleasure militates against a finding of local autonomy." *Vogt*,

294 F.3d at 695. However, the governor's authority on who he may appoint is limited, as the governor may only appoint from a list of names submitted by certain associations. La. R.S. 37:914. This restriction on the governor's discretion "tugs strongly in favor of a finding of local autonomy, in spite of the governor's role in the appointment process." *Vogt*, 294 F.3d at 695 (internal quotations and alterations omitted).

In sum, there are facts both for and against a finding that the LSBN is autonomous from the state. However, weighing these facts against one another, the Court finds that this factor tilts slightly in favor of finding that the LSBN is entitled to Eleventh Amendment immunity. Nevertheless, given the competing facts, the Court does not attach undue weight to this factor.

### 4. Local Versus Statewide Problems

The fourth factor in determining Eleventh Amendment immunity is whether the entity is concerned with local or statewide problems. *Hudson*, 174 F.3d at 690. When the agency's authority is limited by territorial boundaries, that limitation suggests that the agency is not an arm of the State. *Vogt*, 294 F.3d at 695. Here, the LSBN is concerned with statewide issues. The LSBN is statutorily charged to "preserve, and protect the public health, safety, and welfare by regulating nursing education and practice." La. R.S. 37:911. The LSBN's authority extends to the entire state, and is not limited by any geographic or territorial boundaries. Therefore, this factor weighs in favor of finding that that the LSBN is entitled to Eleventh Amendment immunity.

### 5. Authority to Sue

The fifth factor examines whether the entity has the capacity to sue and be sued. *Hudson*, 174 F.3d at 691. A finding that the entity has the ability to sue and be sued weighs against a finding of Eleventh Amendment immunity. *Id.*

The LSBN's authority to sue and be sued is not clearly established by the statutes creating the LSBN. The DHH clearly has the authority to sue and be sued in its own name, La. R.S. 36:251, and the LSBN is included within the umbrella of the DHH. La. R.S. 37:914. Therefore, it can be argued that the LSBN has similar authority. However, unlike other licensing boards in Louisiana, the Louisiana legislature has not expressly stated that the LSBN has the capacity to sue and be sued. *See, e.g.*, La. R.S. 37:1361 (State Plumbing Board "may sue and be sued"); La. R.S. 37:2161 (Louisiana State Board of Private Investigator Examiners "may sue and be sued"); La. R.S. 37:2161 (State Licensing Board for Contractors "may sue and be sued"). In *Earles*, the Fifth Circuit found that because the agency in question was not expressly given this authority, this factor gave only "slight guidance to our Eleventh Amendment inquiry." 139 F.3d at 1038.

Ultimately, because the statutes creating the LSBN do not clearly articulate that it has the authority to sue and be sued, the Court finds that this factor weighs slightly in favor of Eleventh Amendment immunity. Given this ambiguity, however, this factor has little effect on the Court's analysis.

### 6. Right to Hold Property

The final factor the Court considers is whether the entity has the right to hold and use property. *Hudson*, 174 F.3d at 691. If so, this factor weighs against Eleventh Amendment immunity. *Id.*

As the LSBN concedes, the LSBN has authority to "purchase, lease, maintain, or otherwise contract with respect to immovable property and improvements thereon as it may deem necessary or appropriate to accomplish" its duties. La. R.S. 37:918. Accordingly, this factor weighs against a finding of Eleventh Amendment immunity.

* * *

After carefully weighing the six factors, the Court finds that the LSBN is an "arm of the State," and therefore Louisiana is "the real, substantial party in interest." Of the six factors analyzed, all but two lean in favor of finding Eleventh Amendment immunity. The Court recognizes that the most important factor, the source of funds for the state agency, weighs against a finding that the LSBN is entitled to Eleventh Amendment immunity. However, in a similar case, the Fifth Circuit held that Louisiana's CPA Board was an arm of the State and immune from suit under the Eleventh Amendment despite the fact that the board was solely funded by the fees it collected and was found financially independent from the state. *Earles*, 139 F.2d at 1037. Similarly, here the Court is persuaded that given the broad authority to regulate the nursing profession and nursing education in Louisiana, as well as its close connection to regulating the public welfare, the LSBN is an arm of the State.

Because the LSBN is so closely connected to the State that Louisiana itself is "the real, substantial party in interest," it follows that the LSBN is entitled to Eleventh Amendment immunity from suit against it in federal court. *Vogt*, 294 F.3d at 688–89 (extending the State's Eleventh Amendment immunity to any state agency that is deemed an "arm of the State"). Therefore, the plaintiff's claims against the LSBN are barred, and this Court lacks subject matter

jurisdiction over the plaintiff's claims. Accordingly, the defendant's 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 21) is **GRANTED**.[4]

### IV.     Conclusion

Therefore, Rodgers' Motion for Reconsideration (Doc. 36) is **DENIED**, and the defendant's 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 21) is **GRANTED**.

Signed in Baton Rouge, Louisiana, on December 18, 2015.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[4] Having concluded that the defendant's motion is granted on the first ground the defendants raised, the Court makes no findings as to the alternative grounds for dismiss the plaintiff's suit. However, the Court has reservations as to the issues of state action immunity and whether the plaintiffs have standing to bring this antitrust action.